The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER SYPOLT,

        Plaintiff,

v.

THE TALON GROUP, a division of First American Title Insurance Company, a foreign corporation,

        Defendant.

Case No. C07-1892 MJP

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on Defendant's motion for partial summary judgment. (Dkt. No. 19.) The Court has considered the motion, the response (Dkt. No. 28), the reply (Dkt. No. 39) and all other pertinent documents in the record. After hearing the parties' presentations at oral argument on February 9, 2009, the Court indicated it would grant Defendant's motion. For the reasons set forth below, the Court GRANTS Defendant's motion for partial summary judgment.

**Background**

Plaintiff Christopher Sypolt challenges the pooled account practices used by his escrow agent, The Talon Group, in connection with a real estate transaction. (Dkt. No. 22 at 1.) Defendant The Talon Group ('Talon') is a division of First American Title Insurance

ORDER—1

Company, a subsidiary of The First American Corporation ("FAC"). (Dkt. No. 19 at 1.) Though the Plaintiff's complaint includes factual allegations relating to Talon's use of a "wire/express fee," both parties agree that the present motion only involves Mr. Sypolt's allegations about Talon's "retained interest" claims.

I. Sypolt-Hauser Transaction

Plaintiff's action arises out of his purchase of a condominium. On June 16, 2005, Mr. Sypolt entered into an agreement to purchase a condominium from Gary and Patricia Hauser for $355,000. (Solonti Decl. ¶ 4.) There were several components to the transaction. First, on June 16, 2005, Mr. Sypolt transferred $10,000 in earnest money to his real estate agent, RE/MAX, which held the money in its own trust account. (Id.) Because Talon credited the earnest money against RE/MAX's commission, the money was not transferred to Talon. (Id.) Second, on July 15, 2005, Mr. Sypolt provided Talon with a $31,054.80 personal check, which Talon deposited into its IOLTA escrow trust account on July 18, 2005 (the following Monday). (Id. ¶ 6.) Third, on July 21, 2005, Talon received two wires from RBC Mortgage on Mr. Sypolt's behalf, one for $284,000.00 and another for $35,500.00. (Id. ¶ 7.) These amounts were also held in Talon's IOLTA escrow trust account.

On July 21, 2005, after receiving the two wire transfers, Talon sent the required deeds to a title company and the King County Recorder recorded the documents that afternoon. (Id. ¶ 8.) The transaction officially closed when Talon received the recording information from the title company that afternoon. (Id.) On July 22, 2005, Talon issued a number of checks disbursing the funds. (Id. ¶ 9.)

II. Talon's Challenged Practices

Mr. Sypolt claims Talon deceives its clients and uses them as "cogs in a money-making machine." (Dkt. No. 22 at 1.) First, Plaintiff claims Talon unfairly benefits from the balances

ORDER—2

on its pooled accounts by earning "credits" that can be used to offset its fees with its bank. Second, Mr. Sypolt claims that the large balances in the pooled accounts allow Talon to access a line of credit, from which it earns secret profits.

a. Earnings Credits

Mr. Sypolt challenges the "earnings credits" Talon accumulates based on the balance of its aggregated escrow account. (Dkt. No. 22 at 2.) Earnings credits are monthly rebates banks offer escrow companies based on a formula that incorporates the balance of the escrow account. (Braakman Decl. ¶¶ 2-3.) Talon uses these credits to pay service charges on its bank accounts (with KeyBank) and, if Talon has left over credits at the end of a given month, it uses them to pay off charges on its other accounts and those of its affiliates. (Id. ¶ 4.) Talon asserts that its earnings credits arrangements are standard and used by other escrow agents and banks across the state and nation. (Id.)

b. Low Interest Loans/Line of Credit

Sypolt also argues that Talon's escrow account unfairly provides FAC with a low interest line of credit. (Dkt. No. 22 at 3-4.) Pursuant to a Business Loan Agreement between FAC and KeyBank, KeyBank extends a line of credit to FAC based on the average escrow balance of FAC's subsidiaries. (Braakman Decl. ¶ 5-6.) FAC may only use the line of credit to purchase short-term investments from KeyBank, which it sells monthly to repay amounts drawn against the line of credit. (Id.) FAC allocates the income it earns on the short term investments to its subsidiaries based each one's proportion of the percentage of the average escrow balance. (Id.)

Sypolt claims these two practices are problematic because (1) Talon does not share the proceeds with customers and (2) Talon does not disclose its procedures to its customers. Based on these "retained interest" violations, Sypolt seeks to certify a class to assert claims

ORDER—3

based on (1) the Washington Consumer Protection Act, (2) breach of fiduciary duty, (3) breach of duty as agent, (4) unjust enrichment, and (5) breach of contract. (Dkt. No. 22 at 6-8.)

## Discussion

Talon argues that summary judgment is appropriate because Plaintiff lacks standing to sue and, even if he has standing, he cannot allege an injury as required by each cause of action.

I. Summary Judgment Standard

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

II. Standing

A plaintiff has standing when (1) he has "suffered an 'injury in fact,'" (2) that is causally

ORDER–4

connected to the purportedly offensive conduct, and (3) that injury can be redressed by a "favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations omitted). Injury in fact is defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent.'" Id. at 560 (citations omitted).

First, Defendant argues Plaintiff lacks standing because, by law, Talon was obliged to place Sypolt's funds in the IOLTA account. (See Dkt. No. 19 at 7-8.) Defendant's argument here confuses the interest earned by the Legal Foundation of Washington ("LFW"), pursuant to APR 12.1, with the institutional benefits provided by KeyBank. (See Kinkead Decl., Ex. C.) Plaintiff concedes he does not seek the interest on the accounts and the parties agree that earnings credits and lines of credit do not constitute "interest." (Dkt. No. 28 at 8-9; Dkt. No. 19 at 11-12.) Thus, whether Plaintiff has standing to sue for the interest earned is irrelevant to this matter.

Second, Defendant argues Plaintiff lacks standing because he has no legally protected interest in the earnings credits or the line of credit profits. (Dkt. No. 39 at 5.) Plaintiff asserts that, because LFW only has standing to sue for interest, but not earnings credits of line of credit profits, he must have standing to assert the claims. (Dkt. 28 at 10.) The mere fact that LFW lacks standing does not confer standing to Mr. Sypolt. In Washington Legal Foundation v. Legal Foundation of Washington, the Ninth Circuit described earnings credits in the context of First and Fifth Amendment challenges to the use of IOLTA accounts. 271 F.3d 835, 858 (9th Cir. 2001) (en banc) (plaintiffs challenging the decision to stop the use of earning credits). The court described earnings credits as "nothing but incentive payments to repeat customers, the escrow companies" which are "never the property of the escrow companies' customers." Id. at 859-60 (further holding that customers could not sustain a takings claim based on the escrow company's loss of earnings credits). Though their opinion

ORDER—5

is not binding on this court, Washington's LPO Board has identified the non-interest benefits closing firms receive as "discretionary on the part of the banks and would not otherwise be available to the clients making the deposits." (Kinkead Decl., Ex. D at 7.)

Mr. Sypolt does not have standing to sue for "retained interest" benefits. Because earnings credits are a function of the relationship between the bank and the escrow company, Mr. Sypolt would never be able to earn them individually. He has failed to describe how he suffers from Talon's relationship with KeyBank. Thus, Plaintiff cannot articulate a legally protectable interest sufficient to confer standing. The earnings credits analysis is equally applicable to the context of line of credit benefits. Like earnings credits, a line of credit arises out of the escrow company's relationship with the bank and would not otherwise be available to an individual customer like Mr. Sypolt.

III. Washington CPA Claim/Breach of Contract/Unjust Enrichment

Even if Mr. Sypolt had standing to sue for the non-interest benefits Talon earned, Defendant is entitled to summary judgment on Plaintiff's CPA, contract, and unjust enrichment claims.

First, under the Consumer Protection Act, a plaintiff must demonstrate "a loss of use of property which is causally related to an unfair or deceptive act." Mason v. Mortgage America, Inc., 114 Wn.2d 842, 854 (1990); see also Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 792 (1986) ("The fourth element of a private CPA action requires a showing that plaintiff was injured in his or her business or property." (citing RCW 19.86.090)). Second, a breach of contract is actionable where the contract "imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." Northwest Independent Forest Mfrs. V. Department of Labor and Industries, 78 Wn.App. 707, 712 (1995); see also Norm Advertising v. Monroe Street Lumber Co., 25 Wn.2d 391, 398 (1946).

ORDER–6

In general, each breach of a contract gives rise to cause of action, even if a plaintiff has not suffered any actual damage. See Jacob's Meadow Owner's Ass'n v. Plateau 44 II, LLC, 139 Wn.App. 743, 754 (2007) (citations omitted). However, in a suit for damages only, a Court may dismiss a breach of contract claim where damages have not been suffered. Id. Third, a claim for unjust enrichment can be sustained only where (1) a benefit is conferred on one party by the claimant, (2) the defendant receives the benefit knowingly, and (3) the defendant retains the benefit under inequitable circumstances. Dragt v. Dragt/DeTray, LLC, 139 Wn. App. 560, 576 (2007) (citation omitted).

In short, all three causes of action require that Mr. Sypolt demonstrate some form of actual damage or injury. The Court is persuaded by the Ninth Circuit's description of non-interest benefits as "never the property of the escrow companies' customers." Washington Legal Foundation, 271 F.3d at 858. Mr. Sypolt could not earn these credits on his own and he cannot describe any out-of-pocket loss from Talon's retention of these benefits. He does not describe what he would have done differently if he had known Talon's practices. Plaintiff cannot demonstrate that a material issue of fact exists as to an essential element of these claims; Defendant is entitled to summary judgment. See Celotex, 477 U.S. at 323-24.

IV. Duty as Fiduciary/Agent

Similarly, even if Plaintiff had standing to sue, Talon is entitled to summary judgment on Mr. Sypolt's breach of duty claims. The Washington Supreme Court defined the fiduciary nature of an escrow agent in National Bank of Washington v. Equity Investors. 81 Wn.2d 886, 910 (1973). The court described the relationship as follows:

> As agent, trustee or holder, the escrow holder owes a fiduciary duty to his principals in the same way that all agents are held to such standards. The escrow agent's duties and limitations are defined, however, by his instructions . . . . As a general rule, the escrow holder must act strictly in accordance with the provisions of the escrow agreement . . . In his fiduciary capacity, he must

ORDER—7

> conduct the affairs with which he is entrusted with scrupulous honesty, skill, and diligence.

Id. (internal citations omitted). In Denaxas v. Standstone Court of Bellevue, L.L.C., the Washington Supreme Court reiterated this standard while ruling against a plaintiff who could not "allege any deviation from the agreed-upon instructions." 148 Wn.2d 654, 663 (2003) (en banc).

Plaintiff urges the Court to emphasize the "scrupulous honesty" aspect of the relationship above all others. It is not apparent from the briefing or argument, however, how Talon's failure to describe its non-interest benefits falls short of this standard. Moreover, as Denaxas makes clear, the relevant inquiry is determining whether the Talon deviated from its escrow agreement. In pertinent part, the escrow agreement provides that "the closing agent's fee is intended as compensation for the services set forth in these instructions." (Weaver Decl., Ex. 5.) Mr. Sypolt implies that, because Talon earned non-interest benefits, their fee cannot be fairly described as compensatory. This would require too narrow a reading of "compensation," particularly in light of the other "services" outlined in the contract. Id. Mr. Sypolt has not demonstrated any deviation from the contract or pointed to any provision of the contract that was dishonest. Thus, Plaintiff cannot demonstrate that Talon breached a duty as fiduciary or agent. Defendant is entitled to summary judgment.

**Conclusion**

Though Plaintiff might believe Talon's practices are unfair, he has not articulated an injury that would either confer standing or preserve his claims past summary judgment. The Court ORDERS as follows:

1. The Court GRANTS Defendant's motion for partial summary judgment. (Dkt. No. 19.) Plaintiff's "retained interest" claims are dismissed with prejudice.

ORDER–8

2. Plaintiff's motion for class certification (Dkt. No. 22) is MOOT.

3. Plaintiff's motion to compel (Dkt. No. 55) is MOOT.

4. The parties' joint motion to vacate and reset the case schedule is MOOT.

It is SO ORDERED. The Clerk is directed to transmit a copy of this Order to all counsel of record.

Dated this 25th day of February, 2009.

Marsha J. Pechman
United States District Judge

ORDER–9